Minshall, C. J.
A number of errors are assigned, which, so far as they arise upon the record, we will proceed to notice.
1. It is first claimed that the action of Gifford against the stockholders on. their statutory liability was barred by the statute of limitations. There is no question as to the period of the limitation. The liability is one created by statute, and must, therefore, be commenced in six years from the time it accrues. Section 4981 Rev. Stats.; Hawkins v. Furnace Co., 40 Ohio St. 507.
It is then necessary to determine, first, when the right of action of Gifford against the stockholders accrued, and, second, whether it was commenced in the requisite time thereafter.
The action of the Coal & Iron Company was commenced; October 10, 1878. It was an action by it as a creditor “on behalf of itself and all other creditors of The Sunday Creek Coal & Iron Company,” against the company and its stockholders. Gifford was made a party, and the prayer was that an Tiecount be taken of the amount due it “ and the other creditors of said insolvent company.”
Gifford’s claim was based upon the right to the return of certain bonds, belonging to him, in the possession of the company. He demanded a return of the bonds June 15, 1874. The bonds not being returned, he afterwards commenced suit against the company in the common pleas of the county, and, • at the January term, 1881, recovered a judgment thereon for the sum of $8,863.05 for the conversion of the bonds. Thereafter on August 30, 1881, he, by leave of the court, filed his answer and cross-petition in this suit, setting up the recovery of his judgment, and his right as a creditor of the Coal & Iron Company to resort to the statutory liability of its stockholders for the satisfaction of the same. He, also, as a first cause of action, averred the existence of certain unpaid subscriptions to the capital stock of the company, and asked that they should be first applied to the payment of his claim. This was found against him by the court, and no recovery was allowed him thereon.. So that all the questions on error arise *184 upon the cause of action against the stockholders upon their statutory liability.
Issues of fact were made by the answer of the plaintiff in error, Barrick, and other stockholders, and the replies of Gifford thereto. These issues were all found in favor of Gifford. So that it appears from the record, 1. That he was delayed in the recovery of his judgment against the company by the. opposition of Barrick and other stockholders. 2. That on December 23,1876, the company became insolvent and made an assignment of all its property for the benefit of its creditors. And 3. That up to this time it was the legal and equitable owner of a large amount of unincumbered property, subject to levy and sale on execution, amounting in value at times to more than a hundred thousand dollars, and at no time to less than twenty thousand dollars.
The liability of the stockholders under the statute is not a primary resource of the creditors. Wright v. McCormack, 17 Ohio St. 86. And it follows as a corollary from this, that, as a general rule, it can only be resorted to after the assets of the company have been exhausted. “ This rule,” says Mr. Cook, who has made the subject a special study, “is based upon the principle that the liability of the shareholder is not a primary resource of corporate creditors, and is not, therefore, to be resorted to if the assets of the corporation, including the assessments on the stock enforceable at common law, will suffice to pay the debts.” Cook, Stock and Stockholders, § 219. See, also, to the same effect, Thompson’s Liability of Stockholders, §§ 312, 313 and 324.
But this rule does not require that, in all eases, a judgment must be recovered against the corporation, and an execution issued and returned no goods, before the creditor has the right to proceed against'stockholders on their statutory liability. The law does not require the doing of a vain thing, and, therefore, where the company has become wholly insolvent, has ceased to do business and assigned all its property to a trustee for the benefit of its creditors, the suit to enforce their statutory liability may be commenced against the stockholders by the creditors, without any of them first *185 recovering a judgment against the company and having an execution issued and returned unsatisfied. Morgan v. Lewis, 46 Ohio St. 1; Thompson, Liability of Stockholders, § 321.
But it is claimed on the authority of Hawkins v. Furnace Co., 40 Ohio St. 507, that insolvency, in the sense that the company is indebted in a sum greater than its assets, is sufficient, and that the right of action in favor of creditors against stockholders upon their statutory liability, then accrues, although the company is possessed of property subject to levy and sale on execution, and continues to do business. We do not so understand this case. The question in the case arose upon a demurrer to the petition, which simply averred that ‘‘in the course of its business the company became largely involved in debt, and became insolvent in the year 1860.” And it is said in the opinion by Martin, J., “ Whether a judgment debtor only can', in analogy to a creditor’s bill, maintain the action, is a question that lias not been argued before us, and upon which we express no opinion. The theory of the petition is, that when the company is insolvent and the debt is due, the action accrues. This theory is the more favorable one for the plaintiff in considering the demurrer, and we adopt it.” Now it is plain that what is here meant is, that the court adopts the theory of the plaintiff as the one most favorable to him on the demurrer to his petition, and not that it adopts it as the true rule in determining when the cause of action accrues. If, however, by the term “ insolvent,” as used in this ease, is simply meant the want of assets by a corporation sufficient to pay all its debts, notwithstanding it has property subject to levy and sale on execution, and continués to do business, then it is not approved. Such a rule would be not only uncertain, but deceptive to the creditor. The right to commence the action would be a matter of speculation. It could not be determined before bringing the action and taking an account, whether the company was indebted in a sum greater than its assets would pay or not. A rule of certainty, applicable to such cases, should be adopted. The true rule, and. that which is usually adopted where the company lias property *186 and continues to do business, is to require the creditor first to obtain a judgment against the corporation and cause an execution to be issued, and if it is returned not levied for want of goods, then the creditor has the right to commence suit against the stockholders upon their individual liability, and tbe statute of limitations begins to run against the right of action from that time, and not earlier.
So long as the company is possessed of corporate property and continues to transact its business, the stockholders should be regarded as estopped from averring that the right of action against them as individuals, accrued, by reason of the insolvency of the company, at a period earlier than the return of an execution unsatisfied, issued upon the judgment of a creditor of the company. Stockholders have the means of knowing the condition of their company much better than creditors, and if the company continues to do business upon an insolvent basis, it should be regarded as permitted by the stockholders, as the directors and ofBcers of the company derive their authority from, and are the agents of the stockholders.
We, therefore, conclude that, in this case, the right of the creditors of the Coal & Iron Company, to sue its stockholders upon their statutory liability, accrued, when the company made an assignment of all its property and ceased to do business on December 23, 1876, and not earlier. Thompson, Liability of Stockholders, § 293.
2. The next question is, was it arrested by the commencement of judicial process within the limitation of the statute ? A suit in the nature of a creditor’s bill is the proper proceeding to be adopted by creditors of an insolvent corporation, seeking to enforce the statutory liability of its stockholders. Umsted v. Buskirk, 17 Ohio St. 113. And, when such suit is commenced, no creditor can acquire priority, or institute a separate suit for the enforcement of such liability in his own behalf. Wright v. McCormack, 17 Ohio St. 86. So that it necessarily follows, that the effect of commencing the suit by one creditor, is to save the running of the statute of limitations, not only as against the claim of the one filing *187 it, but, also, as against the claim of every creditor of the corporation who comes into the action before its final determination. And this is the general rule. “ A bill filed by one creditor, as plaintiff, in behalf of himself and others, will prevent the statute from running against any of the creditors, who came in under the decree. Every creditor has, after the filing of a bill, an inchoate interest in the suit, to the extent of its being considered as a demand, and to prevent his being shut out, because the plaintiff had not obtained a decree within the six years.” Angelí Lim. 6th ed. p. 346, § 331. See, also, Sterndale v. Hankinson, 1 Simons Ch. 393; Brinkerhoff v. Bostwick, 99 N. Y. 185; Angell Lim., § 167.
“ In such a proceeding,” says Morawetz, “ the proceeds of the liability of all the shareholders are regarded as a fund to be distributed ratably among all the creditors. Every creditor is entitled to come in and share in the distribution, whether he has previously obtained a judgment or not. Those creditors whose claims against the corporation are disputed may establish their claims before a master in chancery or referee, or in such' other way as the court may direct.” Morawetz Priv. Corp., § 884.
An examination of the amended petition of the Iron Company, filed April 1, 1881 (the original petition filed Oct. 10, 1876, not being printed), shows that it was in fact a creditor’s bill. It purported to be, and was brought by the plaintiff “on behalf of itself and all other creditors of the Coal & Iron Company; ” and asked for an account on behalf of itself “ and the other creditors of said insolvent company.” Hence as Gifford’s cause of action against the stockholders first accrued in 1876, it was not barred when the suit was begun. And this would be so, even if it were held that, as to him, it was not commenced until he filed his cross-petition, which was August 10, 1881.
3. It is also claimed as a defense, that, after the assignment by the company and the acceptance of his trust by the assignee, an agreement was entered into by the assignee, Gifford and the other creditors, that the unpaid subscriptions *188 averred bjr Gifford in his first cause of action to be due, should not be collected or required by the assignee to be paid; and that by reason of this agreement Gifford lost his right to enforce payment under the statutory liability, on the ground that he had thereby released a primary fund, and to which he might have resorted for the payment of his claim. We shall not consider the question of law intended to be raised by this defense, for the reason that there is no positive averment that there were any unpaid subscriptions to be collected. The judgment of the court was against Gifford on his first cause of action ; in other words, it found against the existence of any such subscriptions ; so that there was nothing to release by the alleged agreement, and the rights of the defendant were in no way affected thereby. In order to have raised the question, the defendant should have averred that there were such unpaid subscriptions, and that they were released by the agreement. But this has not been done.
4. It is also claimed that the court erred in sustaining a demurrer to the sixth defense of the defendant’s answer. It reads as follows:
“ That 200 of the 400 shares which the defendant in said second cause of action is alleged to be the owner, had not been issued or sold by the said The Suuday Creek Coal & Iron Company, nor was the legal or equitable owner or holder thereof, at the time said last named company assumed and agreed with said The Sunday Creek Cóal & Iron Mining & Transportation Company to pay and perform the said contract between said last named company and said Gifford, but was first sold and issued by the said The Sunday Creek Coal & Iron Company several years after it so assumed to pay Gifford, but was so sold and issued before the said Gifford made his said demand for the return of the bonds of June 15, 1874.
“ Wherefore he says he is not liable to said Gifford in respect of said last named 200 shares.”
The Sunday Creek Coal & Iron Company grew out of the prior company named in the defense, and seems to have acquired the property and assumed the obligations of that *189 company. The obligation to Gifford in regard to these bonds was one of them. The bonds had been received from him as an accommodation, no consideration being paid for the loan. The obligation assumed by the bailee was to cut off the coupons as they matured, sell them and remit the proceeds to Gifford, and return the bonds on thirty days’ notice. The obligation arose ex locato, and no liability beyond this accrued to Gifford as against the company until, upon demand, it refused to return the bonds, which was June 15, 1884; so that, as a matter of law and fact, the liability of the company for the conversion accrued to Gifford after Barrick became the owner of all his stock.
But in holding the facts pleaded insufficient to constitute a defense, we do not place our decision on this ground. Whilst there are some resemblances between the stockholders of a corporation and the members of a partnership, there are few that are real, and no inferences can be drawn therefrom as to the rights of creditors against stockholders upon their individual liability. Taylor Priv. Corp., § 716. A new member of a firm is not, in the absence of agreement, liable for the debts of the firm contracted before he became a member. The addition of a new member makes a new firm. A change, however, in the stockholders of a corporation has no legal effect upon its status. It remains, through all changes in the personnel of its stockholders, the same legal entity, possessed of the sajne rights, and subject to the same liabilities. When one purchases stock in a corporation, he acquires a fractional interest in the capital stock and assets of the company, proportionate to the amount of his stock. If there is a surplus, he acquires an equivalent interest in it, and is entitled to dividends when they are earned; but if there should happen to be a deficiency, the maxim applies, qui sentit eommodum sentiré debet et onus, and is, therefore, required to contribute his share to the discharge of the common burden. The application of this principle is not varied by the time when the owner acquired his stock. The right with the correlative duty is an incident of the stock. There is no difference in this regard, between the opinion of the *190 majority and that of the minority in the case of Brown v. Hitchcock, 36 Ohio St. 667. In both, it is held, that the individual liability of stockholders to creditors, is to be discharged primarily by those who are the owners of the stock at the time the right to assert it accrues. But in the opinion of the majority it was held, that, in the case of the insolvency of an existing owner, a person from whom the insolvent existing owner obtained the stock by assignment, either mediately or immediately, may be made liable for such debts as may have been contracted while he remained owner —the minority holding that the obligation attached exclusively to those who are holders of the stock at the winding up of the company, or when the right is asserted by creditors.
If, then, an existing stockholder is solvent, it is immaterial, so far as his liability to creditors is concerned, when he became the owner of the stock, or from whom he acquired it. As such stockholder he is individually liable for the debts of the company to the extent limited by the statute. Such liability attaches to every share of stock issued by a company; the stock and the liability go together, so that whoever owns the stock must sustain the burthen when the company becomes insolvent.
The plaintiff in error relies upon Bonewitz v. The Bank, 41 Ohio St. 78. No such question arose in that case. All that was there decided is, that a finding that two of the stockholders did notown stock at^the time the indebtedness of the plaintiff accrued, did not authorize a judgment in their favor releasing them from liability. This was right, and determined the question before the court. The additional remark, that, “ if the finding had been, that the stock they held when the action was commenced had not been sold by the corporation until after the debt of the plaintiff had accrued, the judgment would have been proper,” was simply a misleading statement outside of the case, and no way necessary to its determination.

Judgment affirmed,